**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE RULE 45 SUBPOENAS
TO NON-PARTIES
HERMITAGE GLOBAL PARTNERS LP and
"WILLIAM BROWDER, DIRECTOR OF
HERMITAGE GLOBAL PARTNERS LP"

In the Matter of

UNITED STATES OF AMERICA,

Plaintiff,

v.

PREVEZON HOLDINGS LTD.,
PREVEZON ALEXANDER, LLC,
PREVEZON SOHO USA, LLC,
PREVEZON SEVEN USA, LLC,
PREVEZON PINE USA, LLC,
PREVEZON 1711 USA, LLC,
PREVEZON 1810, LLC,
PREVEZON 2009 USA, LLC,
PREVEZON 2011 USA, LLC,
FERENCOI INVESTMENTS, LTD.,
KOLEVINS, LTD.,

Defendants.

Misc. No. ____________

[Underlying civil action filed in the U.S. District Court for the Southern District of New York, Case No. 1:13-cv-06325]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF NON-PARTY HERMITAGE GLOBAL PARTNERS LP TO QUASH DEPOSITION SUBPOENAS AND TO AWARD FEES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii
PRELIMINARY STATEMENT ..... 1
FACTUAL BACKGROUND ..... 3
I. The Subpoenaed Parties ..... 3
A. Hermitage Global ..... 3
B. William Browder ..... 3
II. The SDNY Action ..... 4
A. The Prevezon Defendants Issue the Defective Subpoenas ..... 6
ARGUMENT ..... 7
I. The Director Subpoena Must Be Quashed ..... 7
A. The Director Subpoena Has Not Been Served, and This Court Lacks Personal Jurisdiction Over Mr. Browder ..... 7
II. The Hermitage Global Subpoena Must Be Quashed ..... 8
A. The Hermitage Global Subpoena Fails to Comply with Rule 45(c) ..... 8
B. Exercising Personal Jurisdiction Over Hermitage Global Would Not Comport With Constitutional Notions of Fairness ..... 10
III. The Subpoenas Improperly Attempt to Circumvent International Law ..... 11
CONCLUSION ..... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

Alkanani v. Aegis Def. Servs., LLC,
No. 09-cv-1607, 2014 U.S. Dist. LEXIS 39946 (D.D.C. Mar. 26, 2014) ............................11

Am. Soc'y of Media Photographers, Inc. v. Google, Inc.,
No. 13-C-408, 2013 WL 1883204 (N.D. Ill. May 6, 2013)............................12

Dopson-Troutt v. Novartis Pharms. Corp.,
295 F.R.D. 536 (M.D. Fla. 2013)............................8

Dow Chem. Can., Inc. v. HRD Corp.,
2010 U.S. Dist. LEXIS 66374 (S.D. Tex. July 2, 2010)............................10

E3 Biofuels, LLC v. Biothane Corp.,
No. 1:12-mc-76, 2014 WL 794787 (S.D. Ohio Feb. 27, 2014)............................13

Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc.,
45 F.R.D. 515 (S.D.N.Y. 1968) ............................10

Estate of Klieman v. Palestinian Auth.,
293 F.R.D. 235 (D.D.C. 2013)............................9

Estate of Ungar v. Palestinian Auth.,
396 F. Supp. 2d 376 (S.D.N.Y. 2005)............................7

Godfrey v. Iverson,
No. 07-7151, 2007 U.S. Dist. LEXIS 43269 (D.D.C. June 15, 2007)............................9

In re Baan Co. Sec. Litig.,
81 F. Supp. 2d 75 (D.D.C. 2000) ............................11

In re Marathe,
459 B.R. 850 (Bankr. M.D. Fla. 2011) ............................11

In re Sealed Case,
141 F.3d 337 (D.C. Cir. 1998)............................10

In re Teknek, LLC,
05-27545, 2006 WL 2136046 (Bankr. N.D. Ill. June 30, 2006)............................10

Laker Airways Ltd. v. Pan Am. World Airways,
607 F. Supp. 324 (S.D.N.Y. 1985) ............................12

Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, 286 F.R.D. 8 (D.D.C. 2012) ....................12

Monge v. Maya Magazines, Inc., No. 02:10-cv-00230, 2010 U.S. Dist. LEXIS 81723 (D. Nev. July 12, 2010) ....................9, 10

Night Hawk Ltd. v. Briarpatch Ltd.,L.P., No. 03 Civ. 1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) ....................12, 13

Ricoh Co. v. Oki Data Corp., No. 09-694, 2011 U.S. Dist. LEXIS 90297 (D. Del. Aug. 15, 2011) ....................7

Scioneaux v. Elevating Boats, LLC, No. 10-0133, 2010 U.S. Dist. LEXIS 120825 (E.D. La. Oct. 22, 2010) ....................9

W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC, Misc. No. 09-126, 2010 U.S. Dist. LEXIS 3774 (D. Del. Jan. 19, 2010) ....................9

Wultz v. Bank of China, Ltd., No. 11-CV-1266, 2014 WL 572527 (S.D.N.Y. Feb. 13, 2014) ....................8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 30(b)(6) ....................8, 9, 10

Fed. R. Civ. P. 45 .................... *passim*

Non-party Hermitage Global Partners LP ("Hermitage Global"), by and through its undersigned counsel, hereby respectfully moves this Court pursuant to Fed. R. Civ. P. 45(d)(3) for an order (i) quashing non-party subpoenas for deposition testimony (the "Motion") issued by defendants in the federal forfeiture and money laundering action entitled United States of America v. Prevezon Holdings Ltd., et al., Case No. 1:13-cv-06326 (the "Prevezon Defendants"), pending in the United States District Court for the Southern District of New York (the "SDNY Action"), and (ii) awarding fees and costs pursuant to Fed. R. Civ. P. 45(d)(1). Because the place of compliance for both the Director Subpoena and the Hermitage Global Subpoena is set in this District, movant seeks relief from this Court pursuant to Fed. R. Civ. P. 45(d)(3)(A).[1]

## PRELIMINARY STATEMENT

This Motion seeks to quash two non-party deposition subpoenas issued by the Prevezon Defendants, as follows:

First, the Motion seeks to quash a subpoena purportedly issued to "William Browder, Director of Hermitage Global Partners LP," and allegedly served through the registered agent of Hermitage Global (the "Director Subpoena").[2] Mr. Browder resides in England, and is not (and has never been) a director of Hermitage Global. In fact, Hermitage Global does not have (and has never had) a board of directors. Therefore, the Director Subpoena has not been served on Mr. Browder in accordance with Fed. R. Civ. P. 45(b)(1), Mr. Browder is not subject to the jurisdiction of this Court, and the Director Subpoena must be quashed.

[1] The document portion of the Subpoenas will be addressed in a separate motion to be filed by the Prevezon Defendants. In addition to the jurisdictional arguments made in this Motion, the position of Hermitage Global will be, *inter alia*, that the document subpoenas are astonishing in their overbreadth, are unduly burdensome, seek information not in the possession, custody or control of Hermitage Global, and improperly attempt to circumvent international law on obtaining discovery abroad.

[2] The Director Subpoena is annexed as Exhibit A hereto.

Second, the Motion seeks to quash a deposition subpoena served on Hermitage Global (the "Hermitage Global Subpoena"), a non-party Delaware limited partnership that has no nexus to the SDNY Action, and is not mentioned in the Verified Complaint annexed to the Hermitage Global Subpoena.[3] Because Hermitage Global does not employ anyone in the United States—let alone any suitable witness within 100 miles of this District who could testify on Hermitage Global's behalf—the Hermitage Global Subpoena must be quashed for failure to comply with Fed. R. Civ. P. 45(c)(1)(A).[4]

Upon information and belief, the Prevezon Defendants purported to serve the Hermitage Global and Director Subpoenas—notwithstanding the foregoing glaring deficiencies—in an effort to circumvent international law, and to obtain information that they believe to be in the possession of Hermitage Capital Management Limited ("Hermitage Capital"), a Guernsey limited company that was founded by Mr. Browder. While Hermitage Global has no connection to the SDNY Action, the SDNY Action arises out of a massive fraud perpetrated in Russia against Russian taxpayers and the Hermitage Fund, a Russia-dedicated fund that was advised by Hermitage Capital (the "Hermitage Fund").[5] Defendants in the SDNY Action are accused by the United States of benefitting from the corrupt and murderous Russian enterprise by receiving proceeds of its fraud, which the United States seeks to recover by forfeiture. Recognizing that, as foreign residents, neither Hermitage Capital nor Mr. Browder (both of whom were victims of the Russian fraud) are subject to their subpoena power, rather than proceeding with discovery

[3] The Hermitage Global Subpoena is annexed as Exhibit B hereto.

[4] By filing this Motion for the limited purpose of seeking to quash the Subpoenas, Hermitage Global does not consent to personal jurisdiction in this Court, and instead maintains that there is none. As noted, Mr. Browder has not been served with the Director Subpoena, and this Motion does not operate as a consent to jurisdiction on his behalf.

[5] When Hermitage Capital began uncovering the fraud, the fraudsters retaliated by, *inter alia*, murdering Hermitage Capital's lawyer, Sergei Magnitsky.

through proper international channels, the Prevezon Defendants issued the Hermitage Global and Director Subpoenas, both of which are fatally flawed and must be quashed.

## FACTUAL BACKGROUND

### I. The Subpoenaed Parties

#### A. Hermitage Global

Hermitage Global is a Delaware limited partnership formed on February 20, 2007 to operate as a private investment partnership for the benefit of U.S. taxable investors. See Declaration of Andrew Pucher (the "Pucher Decl.") ¶ 3.[6] Hermitage Global's general partner is Hermitage Global General Partner Limited, a limited liability company established under the laws of the Cayman Islands. Id. ¶ 1. Hermitage Global does not have (and has never had) a board of directors, and does not employ anyone in the United States. Id. ¶¶ 4, 7. The offshore fund for which Hermitage Global served as a feeder fund returned capital to outside investors in 2013. Pucher Decl. ¶ 3. Aside from having an interest in minimal residual investments that cannot be liquidated because they are illiquid securities, Hermitage Global has no operations in the United States or elsewhere. Id. ¶¶ 3, 4. Hermitage Global had no involvement in the events giving rise to the SDNY Action, and is not mentioned in the Verified Complaint filed in that Action. Id. ¶ 6.

#### B. William Browder

Mr. Browder resides in, and is a citizen of, the United Kingdom. Mr. Browder is not (and has never been) a director of Hermitage Global, nor does Mr. Browder hold any other management position at Hermitage Global. Pucher Decl. ¶¶ 7, 9. Rather, Mr. Browder is the founder and Chief Executive Officer of Hermitage Capital, a Guernsey limited company and

[6] The Pucher Decl. is annexed hereto as Exhibit C.

investment advisory firm. As discussed below, the SDNY Action arises out of a $230 million fraud that was perpetrated against the Hermitage Fund and Russian taxpayers beginning in 2007.

## II. The SDNY Action

The U.S. Attorney for the Southern District of New York commenced the SDNY Action on or about September 10, 2013. As set forth in the Verified Complaint in the SDNY Action (which was annexed to the Hermitage Global and Director Subpoenas), the SDNY Action arises out of a $230 million fraudulent scheme perpetrated by a Russian criminal organization including corrupt Russian government officials (the "Organization"). Verified Complaint ¶ 2. The Verified Complaint alleges, *inter alia*, that the Prevezon Defendants "engag[ed] in financial transactions involving the proceeds of the $230 Million Fraud Scheme," and "acted with the intent of promoting and perpetuating the Organization's acts of fraud, corruption and money laundering, and to aid the members of the Organization in promoting their unlawful activities." Id. ¶ 129-130. Thus, the Government seeks the "forfeiture of certain property involved in laundering the proceeds of a Russian tax refund fraud scheme and the imposition of civil money laundering penalties." Verified Complaint ¶ 1.

The $230 million Russian tax refund fraud is described in great detail in the Verified Complaint. Verified Complaint ¶¶ 18-45. In short, to execute the fraudulent scheme, members of the Organization stole the identities of three Russian portfolio companies of the Hermitage Fund (an investment fund advised by Hermitage Capital, and focused on investments in Russia), namely, OOO Rilend, OOO Parfenion, and OOO Makhaon, which were owned by HSBC Guernsey. Id. ¶¶ 16, 18. The Organization then fraudulently re-registered three of the stolen companies to members of the Organization, and orchestrated sham lawsuits against the stolen portfolio companies, in which other members of the Organization appeared in court purporting to

represent the stolen companies, and raised no defense to the falsified claims. ¶ 19. Significant money judgments were thereby entered against the stolen companies. ¶ 19. On the basis of these fraudulently obtained judgments, the Organization applied for refunds of approximately $230 million in taxes paid by the stolen companies to the Russian government. ¶ 20. The refund requests were granted by members of the Organization who were officials at two Russian tax offices within one business day of being made. ¶ 21. After the tax refund was authorized, members and associates of the Organization orchestrated a complex series of transactions to launder and distribute the fraudulently obtained proceeds. ¶ 75. The Verified Complaint alleges, among other things, that two wire transfers totalling more than $850,000 of funds traceable to the $230 million fraud scheme were made to accounts held in the name of Prevezon Holdings. ¶¶ 101-02.

The fraudulent scheme was ultimately exposed by Sergei Magnitsky, a Russian attorney who represented Hermitage Fund's portfolio companies, and who, after discovering the fraud, testified about the Organization's scheme. ¶¶ 55-60. In retaliation for his role in exposing the fraud, Mr. Magnitsky was arrested by perpetrators of the fraud (about whom Mr. Magnitsky had testified). ¶¶ 61-62. Mr. Magnitsky was kept in pretrial detention for nearly a year, and died in custody at the age of 37 after he was beaten by guards and denied medical treatment. ¶¶ 61-66. On December 14, 2012, President Obama signed the Sergei Magnitsky Rule of Law Accountability Act of 2012, which directs the President to create and publish a list of individuals who were, *inter alia*, involved in the detention and death of Mr. Magnitsky, and the criminal conspiracy that he uncovered. ¶ 73.

Hermitage Global does not appear in the Verified Complaint. Hermitage Global had no connection to the Hermitage Fund portfolio companies that were misappropriated as part of the

Organization's fraudulent scheme, and that were owned by HSBC Guernsey. Nor did Hermitage Global have any connection to or involvement in any other aspect of the $230 million fraud, or any other material event described in the Verified Complaint.

**A. The Prevezon Defendants Issue the Defective Subpoenas**

On March 20, 2014, counsel to the Prevezon Defendants sent an email to the undersigned counsel for Hermitage Global, attaching copies of four proposed subpoenas directed to Mr. Browder, Hermitage Global, Hermitage Capital, and Starcliff, S.A., and asked whether counsel would accept service on behalf of Mr. Browder and the three entities. On March 26, 2014, counsel to Hermitage Global advised counsel to the Prevezon Defendants that it was not authorized to accept service of the subpoenas on behalf of Mr. Browder, Hermitage Global, or either of the other foreign entities.

Thereafter, on or about April 16, 2014, counsel to defendants in the SDNY Action served the Hermitage Global Subpoena for a deposition and the production of documents through Hermitage Global's registered agent in Delaware. By agreement of the parties, Hermitage Global served objections to the document portion of the Hermitage Global Subpoena on May 5, 2014. Hermitage Global objected to the document requests on the grounds that, *inter alia*, they seek information that is not in the possession, custody or control of Hermitage Global (which was not involved in any of the facts giving rise to the SDNY Action), purport to seek information from eight foreign corporate entities and one individual residing in England, and constitute an improper attempt to circumvent international law on the taking of discovery abroad.

Also on May 5, 2014, counsel to the Prevezon Defendants purported to serve the Director Subpoena on "William Browder, Director of Hermitage Global Partners LP" through Hermitage Global's registered agent. On more than one occasion, including by email dated May 6, 2014,

counsel to Hermitage Global informed counsel to the Prevezon Defendants that Mr. Browder is not a director of Hermitage Global. By agreement of the parties, Hermitage Global served objections to the document portion of the Director Subpoena on May 15, 2014. Hermitage Global objected to the Director Subpoena on the grounds that, *inter alia*, Mr. Browder is not a director of Hermitage Global, and incorporated by reference its objections to the Hermitage Global Subpoena.

## ARGUMENT

### I. The Director Subpoena Must Be Quashed

#### A. The Director Subpoena Has Not Been Served, and This Court Lacks Personal Jurisdiction Over Mr. Browder

The Director Subpoena was directed to "William Browder, Director of Hermitage Global Partners LP," and was purportedly served through Hermitage Global's registered agent. As set forth in the Declaration of Andrew Pucher (attached as Ex. C), and as noted above, Hermitage Global is a Delaware limited partnership that does not have - and has never had - a board of directors. Mr. Browder is thus not a director (and has never been a director) of Hermitage Global.[7] Accordingly, the Director Subpoena must be quashed for lack of service, as there is no simply no basis on which a subpoena may be served on Mr. Browder, a foreign individual, through the registered agent of a Delaware partnership in which he holds no management position. See Ricoh Co. v. Oki Data Corp., No. 09-694, 2011 U.S. Dist. LEXIS 90297, at *13 (D. Del. Aug. 15, 2011) ("personal service of a subpoena is required when an individual is subpoenaed") (citation and internal quotation marks omitted); Estate of Ungar v. Palestinian Auth., 396 F. Supp. 2d 376 (S.D.N.Y. 2005) (granting motion to quash subpoenas for insufficient

[7] Hermitage Global anticipates that the Prevezon Defendants will cite to a Form D filed with the SEC identifying Mr. Browder as a director of Hermitage Global. The Form D's identification of Mr. Browder as a director of Hermitage Global was erroneous, and the error has been corrected on the most recent Form D filed by Hermitage Global on May 16, 2014.

service on foreign citizen); Dopson-Troutt v. Novartis Pharms. Corp., 295 F.R.D. 536, 537 (M.D. Fla. 2013) ("[s]erving a subpoena requires delivering a copy to the named person...Here, service was improper because service was made on [corporate entity's] registered agent...not the individuals named in the subpoena") (citation omitted). This is not a close call. Without service, there is no personal jurisdiction over Mr. Browder, and the Director Subpoena is a nullity. On this basis alone, the Director Subpoena must be quashed.

## II. The Hermitage Global Subpoena Must Be Quashed

### A. The Hermitage Global Subpoena Fails to Comply with Rule 45(c)

Federal Rule of Civil Procedure 45(c) is clear that a subpoena may only command a person to attend a deposition (i) "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or (ii) within the state where the person resides, is employed, or regularly transacts business in person, if the person is a party or a party's officer...." Pursuant to Rule 45(d)(3)(A)(ii), "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that...requires a person to comply beyond the geographical limits specified in Rule 45(c)." (emphasis added).

The protections afforded to subpoenaed non-parties by the 100-mile rule apply equally to subpoenas served on individuals and to those served on corporate entities pursuant to Fed. R. Civ. P. 30(b)(6). See Wultz v. Bank of China, Ltd., No. 11-CV-1266, 2014 WL 572527, at *5 (S.D.N.Y. Feb. 13, 2014) ("[b]ecause Rule 45's geographic restriction applies to Rule 30(b)(6) testimony, the Court cannot compel anyone to travel from Jerusalem to New York to testify at a deposition"). Therefore, the court "must quash a subpoena where a nonparty organization does not employ anyone who is suitable to serve as a Rule 30(b)(6) representative within 100 miles of the district," as "[a] contrary rule would render Rule 45(c)'s protections meaningless in the

context of Rule 30(b)(6) witnesses." Estate of Klieman v. Palestinian Auth., 293 F.R.D. 235, 239-240 (D.D.C. 2013) (emphasis added).

The Hermitage Global Subpoena fails to comply with Rule 45, in that Hermitage Global does not employ anyone in the United States—let alone a suitable witness within 100 miles of the place of compliance—who could testify on behalf of Hermitage Global at a deposition. Pucher Decl. ¶ 4. Accordingly, the Hermitage Global Subpoena must be quashed pursuant to Rule 45(d). See W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC, Misc. No. 09-126, 2010 U.S. Dist. LEXIS 3774, at *5 (D. Del. Jan. 19, 2010) ("[g]iven that the subpoena was one directed to the corporation pursuant to Fed. R. Civ. P. 30(b)(6), and because [the subpoenaed entity] has demonstrated that its employees work more than 100 miles from Wilmington, the court will quash the subpoena in this regard").[8] Moreover, the Hermitage Global Subpoena must be quashed pursuant to Rule 45(d)(3)(A)(iv) in that it seeks to impose an undue burden on an entity that had no involvement in the facts at issue. See Pucher Decl., ¶ 6.

Notably, the Hermitage Global Subpoena also fails to comply with Fed. R. Civ. P. 30(b)(6) in that it does not "describe with reasonable particularity the matters for examination." The Hermitage Global Subpoena should be quashed on that basis as well. See Scioneaux v. Elevating Boats, LLC, No. 10-0133, 2010 U.S. Dist. LEXIS 120825, at *9 (E.D. La. Oct. 22, 2010) ("[b]ecause the Plaintiff failed to particularize the topics of discussion, [movant's] request to quash the Plaintiffs 30(b)(6) deposition notice is granted"); Monge v. Maya Magazines, Inc., No. 02:10-cv-00230, 2010 U.S. Dist. LEXIS 81723, at *15 (D. Nev. July 12, 2010) (granting

---

[8] The Director Subpoena similarly fails to comply with Rule 45(c), as Hermitage Global understands that Mr. Browder is a UK citizen who resides in England. Pucher Decl. ¶ 9. Accordingly, the Browder Subpoena must also be quashed for failure to comply with the 100-mile rule. See Godfrey v. Iverson, No. 07-7151, 2007 U.S. Dist. LEXIS 43269 (D.D.C. June 15, 2007) (granting motion to quash subpoena on non-party who did not reside within 100 miles of the District of Columbia).

motion to quash subpoena "for failure to describe with reasonable particularity the matters on which examination is requested as required by Rule 30(b)(6) of the Federal Rules of Civil Procedure").

**B. Exercising Personal Jurisdiction Over Hermitage Global Would Not Comport With Constitutional Notions of Fairness**

"The principle that courts lacking jurisdiction over litigants cannot adjudicate their rights is elementary." In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998). Therefore, "[f]ederal courts do require a certain type of personal jurisdiction over a nonparty witness in order to enforce a subpoena against such a person." In re Teknek, LLC, 05-27545, 2006 WL 2136046, at *6 (Bankr. N.D. Ill. June 30, 2006); see also Elder-Beerman Stores Corp. v. Federated Dep't Stores, Inc., 45 F.R.D. 515, 516 (S.D.N.Y. 1968) ("a corporation not doing business in the district cannot be compelled to respond to…a subpoena" directing compliance therein.); In re Sealed Case, 141 F.3d at 341 (noting that if a subpoena dispute could be transferred to a different district, "not only would a transferee court lack statutory authority to quash or enforce another court's subpoena, *it would often lack personal jurisdiction over the nonparty*") (emphasis added); Dow Chem. Can., Inc. v. HRD Corp., 2010 U.S. Dist. LEXIS 66374, at *9 (S.D. Tex. July 2, 2010) ("[i]n addition to questions of authority under the Rules, there are issues of personal jurisdiction that arise in addressing subpoenas in distant districts").

Hermitage Global is a Delaware partnership that does not maintain any office in the District of Columbia, has no employees residing in the District, and does not otherwise systematically conduct business in the forum. Pucher Decl. ¶ 5. Therefore, Hermitage Global would not be subject to jurisdiction in this Court under a traditional Fourteenth Amendment minimum contacts analysis. See Alkanani v. Aegis Def. Servs., LLC, No. 09-cv-1607, 2014 U.S. Dist. LEXIS 39946 (D.D.C. Mar. 26, 2014).

Moreover, exercising personal jurisdiction over non-party Hermitage Global would not comport with "traditional notions of fair play and substantial justice" under either the Fourteenth or Fifth Amendments, as Hermitage Global had no involvement in the facts underlying the SDNY Action, and engaged in no activity in this District or elsewhere that would cause Hermitage Global to believe it could be haled into this Court.[9]

### III. The Subpoenas Improperly Attempt to Circumvent International Law

Finally, both the Director Subpoena and the Hermitage Global Subpoena should be quashed insofar as they evidence the Prevezon Defendants' improper attempt to circumvent international law on the taking of discovery abroad. As discussed above, Hermitage Global is a Delaware partnership that had no involvement in the events underlying the SDNY Action. Mr. Browder is a foreign citizen, and is not a director of Hermitage Global, but the founder and CEO of Hermitage Capital. It appears that the Prevezon Defendants purported to issue the Hermitage Global and Director Subpoenas in an effort to gain access to information that they believe to be in the possession of Hermitage Capital, a foreign entity, and Mr. Browder, a foreign citizen, whose late counsel, Mr. Magnitsky, uncovered the $230 million fraud underlying the SDNY Action. The Prevezon Defendants' improper attempt to use Rule 45 to circumvent international

---

[9] Even if the Prevezon Defendants contend that Fed. R. Civ. P. 45(b)(2) authorizing service of a subpoena "at any place within the United States" somehow removes this case from the traditional minimum contacts analysis, such that this Court need only consider Hermitage Global's contacts with the United States at large, the exercise of personal jurisdiction over Hermitage Global would still need to comport with the Due Process Clause of the Fifth Amendment. See, e.g., In re Baan Co. Sec. Litig., 81 F. Supp. 2d 75, 83 (D.D.C. 2000) ("even if a plaintiff establishes sufficient minimum contacts between the defendant and the forum, the assertion of personal jurisdiction will still be denied if its assertion is, nevertheless, unreasonable and unfair") (citing Asahi Metal Indus. Co. v. Superior Court of Ca., 480 U.S. 102, 114 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985)). Because, as noted, Hermitage Global had no involvement in the events underlying the SDNY Action, fairness and reasonableness mandate that non-party Hermitage Global not be haled into court, in a forum in which it does not do business, to testify in an action to which it has no nexus. See In re Marathe, 459 B.R. 850, 859 (Bankr. M.D. Fla. 2011) ("where a non-party witness has been subpoenaed for a deposition in a federal case, the appropriate inquiry is whether the witness has 'a nexus to the activities being investigated in the underlying legal proceeding.'") (citation omitted).

law provides an independent basis on which to quash the Subpoenas. See Laker Airways Ltd. v. Pan Am. World Airways, 607 F. Supp. 324, 326 (S.D.N.Y. 1985) ("As a second reason to vacate, this Court finds that the service of the subpoenas in New York is a transparent attempt to circumvent the Hague Convention...which sets forth agreed international procedures for seeking evidence in this Court from non-parties abroad."); Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC, 286 F.R.D. 8, 11 n.4 (D.D.C. 2012) ("a motion to quash may be justified where the subpoena is a transparent attempt to circumvent the law").

Furthermore, as noted, the Prevezon Defendants have proceeded with the Director Subpoena notwithstanding that counsel to Hermitage Global has advised counsel to the Prevezon Defendants that Mr. Browder is not a director of that entity. The Prevezon Defendants' insistence on proceeding with two virtually identical subpoenas seeking information from Hermitage Global, a Delaware partnership that had no involvement in the events at issue, and purported director Mr. Browder, a foreign citizen, has caused Hermitage Global to incur considerable and unnecessary expense in, among other things, filing this Motion. Because Hermitage Global has no connection to the SDNY Action, the Hermitage Global and Director Subpoenas can only be viewed as an attempt by the Prevezon Defendants to harass and impose an undue burden on a non-party to the SDNY Action. Rule 45(d)(1) provides for sanctions when a party fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Such sanctions should be awarded here. See Am. Soc'y of Media Photographers, Inc. v. Google, Inc., No. 13-C-408, 2013 WL 1883204, at *6 (N.D. Ill. May 6, 2013) (quashing subpoena and ordering sanction of reasonable attorney's fees where issuing party failed to withdraw subpoena even after learning, during meet-and-confer, that subpoenaed entity was not an entity with relevant information); Night Hawk Ltd. v.

Briarpatch Ltd.,L.P., No. 03 Civ. 1382, 2003 WL 23018833, at *6-7 (S.D.N.Y. Dec. 23, 2003) (quashing subpoena and ordering sanction of reasonable attorney's fees where refusal to withdraw improper subpoena required non-party to institute motion to quash); E3 Biofuels, LLC v. Biothane Corp., No. 1:12-mc-76, 2014 WL 794787, at *2-4 (S.D. Ohio Feb. 27, 2014) (affirming order granting sanctions and awarding attorney's fees based on issuing party's failure to withdraw improper subpoena).

**CONCLUSION**

For all the foregoing reasons, the Motion should be granted in its entirety.

Dated: May 22, 2014
Washington, D.C.

Respectfully submitted,

BROWN RUDNICK LLP

By: ______________________
Paul F. Enzinna (DC Bar No.: 421819)
601 Thirteenth Street NW
Suite 600
Washington, DC 20005
Telephone: (202) 536-1700
Facsimile: (202) 536-1701
penzinna@brownrudnick.com

-and-

Mason C. Simpson (DC Bar No.: 485324)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
msimpson@brownrudnick.com

*Attorneys for Hermitage Global Partners, LP*